[Cite as *Smith v. Gilbert*, 2016-Ohio-1099.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| JODY J. SMITH | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2015-CA-61 |
| | : | |
| v. | : | T.C. NO. 13CVF277 |
| | : | |
| ANGELA GILBERT | : | (Civil appeal from |
| | : | Municipal Court) |
| Defendant-Appellee | : | |
| | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___18th___ day of ____March_____, 2016.

. . . . . . . . . . .

JODY J. SMITH, 475 E. Cassilly Street, Springfield, Ohio 45503
        Plaintiff-Appellant

SCOTT BISSELL, Atty. Reg. No. 0085229, 5455 Paddington Road, Centerville, Ohio 45459
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} This matter is before the Court on the June 10, 2015 pro se Notice of Appeal of Jody J. Smith. Smith appeals from the May 12, 2015 decision of the trial court, issued following a remand from this Court on Smith's appeal from the denial of his Motion for Civ.R. 60(B) Relief from Judgment. The trial court found that Smith did not demonstrate

that he had a meritorious claim against Angela Gilbert, his former fiancée, nor a meritorious defense to Gilbert's counterclaim against him.

{¶ 2} The facts herein were previously set forth in this Court's decision remanding the matter to the trial court as follows:

The record reflects that Smith filed a municipal-court complaint against Gilbert in which he sought the return of a $4,000 engagement ring (or the cash value of the ring) and the repayment of a $4,000 loan. Gilbert filed a counterclaim in which she sought $5,542.60 due to Smith's allegedly unlawful repossession of her van.

The case proceeded to a scheduled bench trial on November 5, 2013. Gilbert and her attorney, Scott Bissell, appeared for trial, but neither Smith nor his attorney, Wilfred Potter, appeared. After noting the absence of Smith and his attorney, the trial court made the following record:

* * * [At] about 11:30 or 11:40 this morning, Mr. Potter came to the Court and indicated that he had just learned that his license was suspended for failing to pay his registration fee. Mr. Potter was advised to contact you, Mr. Bissell[,] and to contact his client as well. The Court did not direct the Plaintiff, Mr. Smith, not to appear today. The Court has had no communications with Mr. Smith.

(Trial Tr. at 3).

Gilbert's counsel, attorney Bissell, then made the following record regarding his communication with Smith's counsel:

* * * I was back at my office around noon [today], and I got a voice

mail that said that, from his secretary that said that there was an emergency and that the hearing was not going forward.

My client had contacted the court and advised me that there had been no motion to continue or anything else, or no, no ruling on that so I came prepared to try this case, Your Honor. And if I may, I would like to enter an oral motion to dismiss the Plaintiff's claim and to grant default judgment on the Defendant's counterclaim. This trial date has been scheduled for quite some time. Mr. Potter and Mr. Smith both had ample notice of this situation. Mr. Potter's being suspended, I think, you know, his client had the option to come to the court and ask for a continuance which I suspect that this court would grant, if he did that.

(*Id.* at 4).

The trial court declined to grant a default judgment on the counterclaim but allowed Gilbert to testify in support of it. Based on her testimony, the trial court entered judgment in her favor on the counterclaim for $5,542.60. It also dismissed Smith's complaint with prejudice. (*Id.* at 9; see also Doc. # 15).

Following the trial court's November 2013 judgment entry, Smith filed a pro se April 2014 motion for relief from judgment. (Doc. # 22A). In an accompanying memorandum, he alleged that Potter's secretary had told him on the day of trial "that Mr. Potter had a personal matter and that our court date would be postponed." (Doc. # 22D). Smith argued, among other things: "I feel that my attorney abandoned me and that I ask the court to

consider this as reason one to enact a Rule 60(B)." (*Id.*).

The trial court held a June 10, 2014 hearing on Smith's Civ.R. 60(B) motion. Smith appeared for the hearing pro se. Gilbert appeared with her attorney. Smith reiterated his claim that Potter's secretary had told him on the morning of trial that Potter had a personal matter and that the trial would be continued. (Motion Transcript at 6). Gilbert's attorney, Scott Bissell, opposed the motion. He acknowledged receiving essentially the same message from Potter's office on the morning of trial. (*Id.* at 5). He argued, however, that Potter's "neglect" did not justify relief from judgment. Rather, Bissell argued that the proper course of action was for Smith to file a malpractice suit against Potter. (*Id.*). After hearing the parties' arguments, the trial court found no grounds for relief under Civ.R. 60(B). Addressing Smith, the trial court explained:

* * * You selected Mr. Potter to represent you in this case and you brought this action.

* * * And then on the day and time of the trial, you weren't here, nor was Mr. Potter here. This trial took place on November the 5th. Notice of that trial date went out three months before. This case was set for trial on August the 6th. What Mr. Bissell says is accurate. Your lawyer neglected you here, but it's not a basis under which the court can set aside this decision.

You have other remedies, but they are not this court vacating this decision. You chose your lawyer and it appears that's what got you here

today. * * *

Miss Gilbert and her lawyer were here pursuant to the notice that the court sent out. I don't have any reason to doubt what you say Mr. Potter's secretary told you, but that doesn't change the fact that this case was set for trial, had been set for trial ninety days in advance; and when the trial day and time came, half the case was here and the case——the half that caused the case to be filed in the first place was not. So the court met its obligation on November 5th. It heard evidence and rendered a decision. And based on the information you've provided today, you haven't satisfied what Civil Rule 60(B) requires in order for the court to vacate the decision in this case.

So the decision stands and Mr. Smith, as I've indicated and as Mr. Bissell has suggested, you're free to pursue other remedies but this decision stands.

(*Id.* at 7–8).

The trial court followed its oral ruling with an entry denying Smith's motion. In its entry, the trial court stated that "while the defendant [sic-the plaintiff] may have received inaccurate advice from the lawyer who previously represented him, he has not demonstrated grounds for the Court to vacate its judgment." (Doc. # 26).

*Smith v. Gilbert*, 2d Dist. Clark No. 2014-CA-81, 2015-Ohio-444, ¶ 3-9.

{¶ 3} On Smith's appeal, this Court concluded that counsel for Smith "engaged in gross neglect that rose to the level of abandonment by being suspended from the practice of law shortly before trial," and that "the present case presents a textbook example of an

extraordinary circumstance where the interests of justice warrant relief under Civ.R. 60(B)(5)." *Id.*, ¶ 16. This Court further noted as follows: "The trial court did not address whether Smith had demonstrated a meritorious claim or defense. Nor did it decide whether he had filed his motion within a reasonable time. Because these matters are committed to a trial court's sound discretion, we will leave it to the trial court to address them in the first instance on remand." *Id.*, ¶ 18.

{¶ 4} At the hearing upon remand, Smith testified as follows on direct examination:

Q. * * * Can you just briefly describe your claims in the underlying case which were presented in the Complaint that initiated this matter?

A. Yeah, that I was engaged with Miss Gilbert and I felt that I was being taken advantage of, and I drew a line in the sand and I felt that she did take advantage of me; and was using me for property. And when I asked for it back, she didn't return it.

Q. And when you refer to property, are you referring to the engagement rings you gave her?

A. The engagement rings and the vehicle.

Q. OK.

A. And then money that I loaned her.

Q. OK, and Miss Gilbert failed to repay those loans?

A. That's correct.

{¶ 5} Smith testified that he learned that judgment was entered against him in the underlying trial in late November 2013, and that he prepared his Civ.R. 60(B) motion himself. When asked why he waited until April 2014 to file the motion, he testified that

he contacted "a couple different attorneys" who did not "want to take on the case * * * but they had given me some information that later, I could file the 60(B) Motion. So I had to research it and that took some time. I work full time. I have two of my own kids and now, I'm in a relationship where there are two other children involved." Smith testified that "[w]e're all busy. * * * And there was a holiday I think during that time, Christmas."

{¶ 6} The following exchange occurred on cross-examination after Smith identified his Civ.R. 60(B) motion:

Q. * * * In your, I'm gonna refer to your Motion and the pages aren't numbered but I'm gonna get to the point where you talked about the 2005 Chrysler Town and Country minivan. And I'll just read to you and I can show you as I read, the reasons for the lien was to protect my investment. Past experiences had made it hard for me to trust signing over a van to someone free and clear. Secondly, I wanted to put the van in her name, due to her granting me - - or you getting a DUI three years prior, it would cost a lot less for full coverage insurance just in her name. Did you write that?

A. I did.

Q. So you didn't write anything in there about there being a loan or a lien on that van, did you? There was only, those two sentences which is your explanation of why there was a lien against the van.

A. OK, I may have pretended that there was a lien on it for that purpose.

Q. And there was, in fact you put a lien but there was no actual

loan? There's no loan document right? Did she sign anything with a guarantee to repay?

A. Yes, and I have copies of it.

Q. You have that?

A. Yes.

Q. Well, I requested discovery from you and your attorney over a year ago and you never provided anything.

A. It was in with the Title Department so I mean, it was - -

Q. How much was the loan for?

A. $10,000.00

Q. Ten thousand dollars on a 2005 Chrysler minivan?

A. Yeah, because I had to pay the taxes on it.

Q. OK, and there's a signed document that she signed?

A. Yes.

Q. But we (sic) have never produced that? * * * You filed your Rule 60(B) motion. You never said anything about a $10,000.00 loan with a guaranteed in writing agreement to repay, correct?

A. It was never initially meant for, to pay me back or, I never was wanting to sell her the van. I never wanted it to get to that point. I was helping her. She didn't have a vehicle. That was the main objective of this and then she was taking me for a ride. That's when I knew. So when I asked for this stuff back and she wanted to play the cat and mouse game, then I knew it wasn't about the relationship. It was more about the

property.

Q. OK, so it's more about vengeance, that's fair to say, right?

A. No.

* * *

Q. But you just said that it was never an intent that she would pay you back?

A. Not originally.

Q. OK.

A. But there was a lien put on it for that purpose.

Q. But you're contradicting yourself. You're saying there's a lien in writing signed by Miss Gilbert.

A. Yes.

Q. $10,000.00

A. She signed it.

Q. Which we have never seen. It's never been produced in discovery, and then you just tell us that oh, that there's no really (sic) intent * * * to ever - -

A. We never even got to the point to take it to trial.

Q. It doesn't matter. You have to produce the discovery. You and your attorney have * * * an obligation when I ask for these documents to provide that.

A. We never even got to that point.

Q. Yes, we did. I filed a motion for discovery and your attorney

responded to it.

A. OK, but I was never asked for anything.

* * *

Q. * * * We're here today to determine if you have a meritorious defense to the countersuit that we filed against you. And that countersuit was whether or not you lawfully repossessed the van and if the lien was valid. What I'm explaining to you is that I have asked for discovery and neither you nor your previous counsel ever * * * produced a signed document by Miss Gilbert that there was an actual valid lien. That's there's actual (sic), a loan to repay which is the only reason you can get a lien on a vehicle is there's money owed on it.

A. Correct.

Q. A mechanic's lien or just a loan document. That document's never presented. You're telling me today that one exists but you never gave it to us. It's delay. Don't have it - -

A. I was never asked for it.

Q. Don't ever have it here today.

A. From my prior attorney to answer your question.

Q. And then you just told us that you, that the intent was really never to repay it. This was (sic) and you're writing in your Motion that you filed with the Court.

A. Correct.

Q. You never once said there's a $10,000.00 loan signed

document. You never mentioned that. All you said was, hey, I've been through some bad relationships and just in case, I want to regift. I want to take back the gift that I gave her is essentially what you're saying, is that true?

A. No.

Q. Did you not say you that (sic) never had really an intention to ever repay any money? Was that your testimony?

A. The lien was put on it for that purpose, yes.

Q. Was your testimony just a few minutes ago that there was never an intent to repay that money?

* * *

A. Initially, no.

{¶ 7} On redirect examination, Smith stated that his complaint alleged two claims, and he testified that Gilbert failed to return the engagement rings he gave to her and to repay the money he loaned to her. On recross examination, the following exchange occurred:

Q. Mr. Smith, you said you loaned her money. Any documents on that money?

A. Yes, it was - -

Q. Did you provide those to your attorney?

A. They were provided, I think, in the - - yeah, I provided them to this attorney.

Q. Signed documents between you and Miss Gilbert with an

understanding that you're gonna repay a sum of money?

A.   There were cancelled checks.

Q. Was there a signed document where she said I'm acknowledging that Jody J. Smith is loaning me "x" number of dollars and I promise to repay, signed Angela Gilbert.   Anything like that?

A.   No.

* * *

At the conclusion of the hearing, the court requested that the parties submit post-hearing briefs.

{¶ 8}  On March 31, 2015, Smith filed "Plaintiff's Supplemental Memorandum in Support of Motion for Relief from Judgment."   Smith argued that Civ.R. 60(B) "does not impute an evidentiary burden upon the moving party beyond the requirement that the material submitted set forth the operative facts of the claim or defense."   Smith asserted that he "has sufficiently demonstrated that he has a meritorious claim.   His complaint for damages sets forth various claims regarding Ms. Gilbert's liability, particularly that Ms. Gilbert defaulted on personal loans and failed to return an engagement ring given to her by Mr. Smith."   According to Smith, "both in the Civ.R.60(B) motion submitted by Mr. Smith and at [the] hearing on remand in this matter, Mr. Smith has clearly and unequivocally stated that he is asserting a claim against Ms. Gilbert for failure to repay personal loans and for return of his engagement ring."   Smith directs our attention to *Billiter v. Winship*, 10th Dist. Franklin No. 93AP-176, 1993 WL 387079 (Sept. 28, 1993), and he asserts, "like in *Billiter*, Mr. Smith has set forth operative facts which have potential merit, namely that he loaned Ms. Gilbert money that she failed to repay (breach of

contract) and provided her with a conditional gift which she failed to return."

{¶ 9} Smith further argued that he asserted a meritorious defense to Gilbert's counterclaim. In response to her allegation that he unlawfully repossessed her vehicle, Smith "has asserted that he had a lien on the vehicle and was entitled to possession of the vehicle by virtue of this lien." Smith reiterated that "Civ.R. 60(B) does not place an evidentiary burden upon Mr. Smith beyond stating operative facts establishing a meritorious claim. Rather, he must only establish a claim or defense that has potential merit." Finally, Smith asserted that his Civ.R. 60(B) motion was timely filed.

{¶ 10} On May 4, 2015, Gilbert filed "Defendant's Supplemental Brief In Opposition of Motion for Relief from Judgment." Gilbert asserted that Smith failed to establish a basis for relief pursuant to Civ.R.60(B)(5), and that his motion was untimely. Gilbert asserted as follows:

* * * The Plaintiff failed to demonstrate at the hearing on his Civ.R. 60(B)(5) [motion] that he had a meritorious claim or defense. In fact, he proffered no evidence at all. The Plaintiff simply claimed that he was misled and abandoned by his trial counsel. The Plaintiff relies solely on the original complaint filed in this case as his basis to satisfy the third prong of [*Mount Olive Baptist Church v. Pipkins Paints and Home Improvement Center, Inc.*, 64 Ohio App.2d 285, 413 N.E.2d 850 (8th Dist. 1979)] and now hopes that the court will do the same. Further, the Plaintiff wants the court to ignore the testimony he gave at the remand hearing where he admitted there was never a valid [lien] on the van that he unlawfully "repossessed", that there was never a promise to repay any money to the Plaintiff, and in

fact he never wanted or expected to be repaid [any] money exchanged between the parties during the relationship. It cannot be an abuse of discretion by the trial court in overruling the Plaintiff's Civ.R. 60(B)(5) motion, if no evidence of a meritorious claim or defense was presented and in the case at bar there was am[p]le evidence that the Plaintiff did not have a meritorious claim or defense.

* * * The Plaintiff, in his complaint, failed to state his claim with any specificity. He simply stated that the Defendant failed to return an engagement ring and failed to repay a four thousand dollar ($4,000.00) loan. The very unspecific and simplistic complaint does not comport with the requirements of an assertion of a meritorious claim or defense. The majority of courts have held that an engagement ring is not a conditional gift and therefore the Plaintiff would not have been entitled to its return. Simply making a claim that is not supported by the law is not evidence of a meritorious claim. Further, in the Plaintiff's Civ.R. 60(B)(5) six and a half page motion, there is absolutely no reference to any loans made to the Defendant or any agreements to repay any money [whatsoever]. Additionally, the Plaintiff failed to respond to the Defendant's demand for discovery. If the Plaintiff had been present for trial or been granted a new trial if he had requested one, it is very unlikely he would have prevailed. The Plaintiff would not have been able to present any evidence other than his own, self-serving testimony at trial. The Plaintiff failed to provide any documents, witness lists, exhibits of any kind through discovery and any

attempt to proffer such evidence would have been objected to and certainly not be allowed into evidence. Lastly and most importantly, it must be remembered that the Plaintiff admitted that no money was ever promised or expected to be repaid.

{¶ 11} The trial court initially determined that Smith's Civ.R.60(B) motion was timely filed, based upon "his work schedule and his obligations as a father of two" as well as "the holidays and the time required to research prior to filling." The court then concluded as follows:

Turning next to the merits of plaintiff's claims, he seeks return of a $4000.00 engagement ring and loan in the amount of $4000. There are two brief references in the written material where plaintiff mentions requesting the return of the ring. There are no affidavits attached to his motion. Though there have now been two hearings on plaintiff's motion, he has failed to present any evidence as to the value of the ring or the discussion of the parties when it was exchanged. There is a similar failure of evidence as to his claims for $4000.00 in loans. Attached to plaintiff's written motion are photocopies of nine checks, only four of which are made payable to defendant and together total $1800.00. Attached as well are four copies of electronic debits on an account at Huntington and one transfer apparently involving the same account, though "Huntington" does not appear on that document. Again, there are no affidavits attached to plaintiff's written motion, nor did he present any evidence at either hearing as to the significance of the aforementioned documents.

**{¶ 12}** The court noted, quoting *Mount Olive Baptist Church v. Pipkins Paints and Home Improvement Center, Inc.*, 64 Ohio App.2d 285, 413 N.E.2d 850 (8th Dist. 1979), that " '[w]here the trial court grants a hearing to determine the appropriateness of the [Civ.R. 60(B)] motion, evidence must be introduced at the hearing to satisfy the three-pronged test" announced in *GTE Automatic Electric, Inc. v. ARC Industries,* 47 Ohio St.2d 146, 351 N.E.2d 113 (1976). The trial court concluded that Smith "has failed to demonstrate he had a meritorious claim with regard to either the ring or the loan."

**{¶ 13}** Regarding Gilbert's counterclaim, the trial court determined as follows:

In her counterclaim, defendant seeks $5542.60 [in] compensatory damages for the van plaintiff repossessed and titled in his name, pre-and post- judgment interest, attorney fees and costs. To prevail on his motion with regard to the counterclaim, plaintiff must demonstrate he has a meritorious defense. Plaintiff testified hearing (sic) that he had a written loan document signed by defendant as to the $10,000 purchase price of the vehicle. When pressed by defense counsel as to why the document had never been provided in discovery and is not mentioned in plaintiff's 60(B) motion, plaintiff testified: "It was never initially meant for . . . to pay me back or I never wanted to sell her the van . . . I never wanted it to get to that point. I was helping her, she didn't have to pay for it. That was the main objective of this, then she was taking me for a ride, that's when I knew . . . So when I asked for the stuff back and she wanted to play the cat and mouse game, then I knew it wasn't about the relationship, it was more about the property. Shortly thereafter, this exchange took place:

BISSELL: "You just said there was never an intent that she repay you back.["]

SMITH: "Not originally."

Based on the evidence presented, the Court finds the plaintiff failed to present evidence that the purchase price of the van was a loan to the defendant which the parties agreed she would repay. Consequently, he has not demonstrated a defense to her counterclaim.

Accordingly, plaintiff's motion to vacate the Court's November 19, 2013 decision is denied.

{¶ 14} Smith asserts one assignment of error herein as follows:

SHOW A BURDEN MERITORIOUS CLAIM PURSUANT TO CIV.R. (60)(B). (sic)

{¶ 15} Smith asserts in part as follows:

* * *

* * * The burden is merely that I have a meritorious claim, which means a basic showing that I have a potential claim, *not that I will ultimately succeed.* I had come into the court room with the understanding that I would eventually get another court date to present all the evidence of my case – a sort of do over in a sense considering all that had gone wrong with my previous counsel and original hearing date. I did not have any of the information that I had given to my attorneys with me on March 17th 2015. I was under the impression that would be something we would have to present at a later date. When I was called up to the stand I was not

expecting to present my case.   * * * During those proceedings I felt as if I was on a trial as though I was the defendant in my own lawsuit with only part of the information being looked at and none of it had anything to do with the substance of the case – ALL THE EVIDENCE WAS MISSING . . .

I am not confident the attorney representing me totally understood what was going on during this setting.   What I do know is this, I gave all the evidence and other information to my foregoing attorneys to handle these matters, trusting they were doing their job and to this day I don't even know if my former attorney followed the correct court proceeding or not. * * *I am out over $14,000.00 if not more, as it sickens me to think about it and the person who I am/was suing is attempting to get another $5500.00 for which she has already taken more than $7,000.00 that I can actually prove, as well as attempting to defraud me of a van I had purchased for the use of our family. * * *

Ordinarily, when an engagement is broken the giver is entitled to the return of the engagement ring and/or monetarily (sic) investments and the fault as to who broke the engagement are not relevant. * * *

Your Honor(s), below I have listed most of the evidence that was missing from the Court proceedings or never given during discovery; I had given the originals to Mr. Potter and some of it is still missing due to Attorney Potter having it in his possession.   I feel this may be why the Ruling Court was not clear on why I could not show a meritorious claim and why the originally (sic) law suit (sic) was initiated.

{¶ 16} Gilbert responds as follows:

* * *

In the present case, the Appellant admits and concedes [that] he has not sufficiently demonstrated that he had a meritorious claim and/or defense. The Appellant failed to provide any documents or proof of any kind that any loans existed, the value or conditions of the gift of the engagement ring, or the validity or lawfulness of the lien on the vehicle. In fact the Appellant admits in his brief that, "ALL THE EVIDENCE WAS MISSING. . ." * * * The Appellant goes on to explain that the lack of evidence provided during discovery, ". . . may be . . . why I could not show a meritorious claim." * * * Further, the Appellant improperly attempts to proffer evidence to this Court that was never disclosed during the pendency of this case at the trial court, admitting, "I have listed most of the evidence that was missing from the Court proceedings or never given during discovery. * * * "

{¶ 17} Civ.R. 60(B) provides in relevant part as follows:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time * * *. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules.

**{¶ 18}** As this Court noted in *Smith*:

"To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. "These requirements are independent and in the conjunctive; thus the test is not fulfilled if any one of the requirements is not met." *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994). We review the disposition of a Civ.R. 60(B) motion for an abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

*Smith v. Gilbert*, 2d Dist. Clark No. 2014-CA-81, 2015-Ohio-444, ¶ 12.

**{¶ 19}** As noted above, this Court determined that Smith's initial counsel "engaged in gross neglect that rose to the level of abandonment," and that Smith demonstrated that he was entitled to relief pursuant to Civ.R.60(B)(5). It is undisputed

that Smith's motion was timely filed. Regarding the remaining prong of the test set forth above, this Court has previously noted as follows:

> In order to establish a meritorious claim or defense under Civ.R. 60(B), the movant is required to allege a meritorious claim or defense, not to prove that he will prevail on such claim or defense. *See State v. Yount*, 175 Ohio App.3d 733, 889 N.E.2d 162, 2008-Ohio-1155, at ¶ 10. "In order to satisfy that requirement[,] the motion and/or affidavit submitted in support of the motion must set out operative facts which, if true, constitute a prima facie showing of the claim or defense concerned. A prima facie showing is one which is '[s]ufficient to establish a fact or raise a presumption unless disapproved or rebutted.' Black's Law Dictionary." *Stewart v. Heard*, Montgomery App.No. 20787, 2005-Ohio-5241, at ¶ 24.

*Savage v. Delamore Elizabeth Place*, 2d Dist. Montgomery No. 23147, 2009-Ohio-2772, ¶ 23.

**{¶ 20}** As the Tenth District further noted:

> In a motion for relief from judgment, the moving party is not compelled to prevail upon an asserted claim or defense which has not yet been litigated. Such a burden would resonate in illogical tones. The movant is only obliged to allege a claim or defense which has potential merit. *Moore v. Emmanuel Family Training Ctr.* (1985), 18 Ohio St.3d 64, 67. Furthermore, this standard does not impute an evidentiary burden upon the moving party beyond the requirement that the material submitted set forth the operative facts of the claim or defense. *Coulson v. Coulson*

(1983), 5 Ohio St.3d 12, 16, citing *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 105.

*Billiter*, 1993 WL 387079 at * 3.

{¶ 21} "This court has recognized that Civ.R. 60(B) is a remedial rule that must be liberally construed in order to effect a just result. *Wayne Mut. Ins. Co. v. Marlow* (June 5, 1998), Montgomery App. No. 16882, unreported, citing *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 21, 520 N.E.2d 564." *Spitler v. Spitler*, 2d Dist. Clark No. 98CA1480, 1999 WL 280482, *2 (May 7, 1999).

{¶ 22} We conclude that Smith has demonstrated that the trial court abused its discretion upon remand. Smith alleged in his Complaint that he gave Gilbert an engagement ring, and that it was a conditional gift valued at $4,000.00 that she refused to return upon the termination of their engagement. He alleged that he loaned her approximately $4,000.00, and that she has refused to repay the money. As noted above, Smith was not required to prove his allegations at the hearing on his Civ.R. 60(B) motion (nor was the hearing an appropriate forum to address discovery issues), and we conclude that Smith's complaint and testimony alleged meritorious claims for trial. Regarding Gilbert's counterclaim that Smith unlawfully repossessed her van, Smith asserted (and was not required to prove) that he had a valid lien on the van. We conclude that Smith alleged a meritorious defense to Gilbert's counterclaim. Since the trial court abused its discretion in concluding that Smith failed to assert a meritorious claim or defense, Smith's assigned error is sustained, and the judgment of the trial court is reversed and vacated. The matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to

Jody J. Smith
Scott Bissell
Hon. Denise L. Moody